UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **25-CR-60058-LEIBOWITZ/AUGUSTIN**

18 U.S.C. § 793(e)
18 U.S.C. § 793(h)
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

CARL HALLER,

Defendant.
_____/

FILED BY ___BM___ D.C.
Mar 13, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless alleged otherwise:

### Introduction

1. Defendant **CARL HALLER** was a United States citizen who worked as a Special Forces Intelligence Sergeant for the United States Army Reserve, as part of the United States Department of Defense (DoD).

2. As a Special Forces Intelligence Sergeant, **CARL HALLER** served as a Detachment Intelligence Sergeant for a Central Command (CENTCOM) focused Special Forces Operational Detachment-Alpha (SFOD-A) specializing in Foreign Internal Defense, Unconventional Warfare, and Direct Action.

3. As a Detachment Intelligence Sergeant, **CARL HALLER** was responsible for passive/active intelligence and counterintelligence in the area of operations to include collection, analysis, biometrics, area studies and operational security. **HALLER** also worked as an

information security manager and maintained security clearances. As an information security manager, part of **HALLER's** job duties included training other members of his unit on the proper handling, storage, and dissemination of classified information.

## Classified Information

4. National security information was information owned by, produced by, produced for, and under the control of the United States government. Pursuant to Executive Order 12958, signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information was classified as "TOP SECRET," "SECRET," or "CONFIDENTIAL," as follows:

   a. Information was classified as TOP SECRET if the unauthorized disclosure of that information reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority was able to identify or describe.

   b. Information was classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the national security that the original classification authority was able to identify or describe.

   c. Information was classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the original classification authority was able to identify or describe.

5. The classification marking "NOFORN" stood for "Not Releasable to Foreign Nationals" and denoted that dissemination of that information was limited to United States persons.

6. Classified information related to intelligence sources, methods, and analytical processes was designated as Sensitive Compartmented Information (SCI). SCI was to be processed, stored, used, or discussed in an accredited Sensitive Compartmented Information

Facility (SCIF), and only individuals with the appropriate security clearance and additional SCI permissions were authorized to have access to such national security information.

7. Pursuant to Executive Order 13526, information classified at any level could be lawfully accessed only by persons determined by an appropriate United States government official to be eligible for access to classified information and who had signed an approved non-disclosure agreement, who received a security clearance, and who had a "need-to-know" the classified information.

8. Classified information of any designation had to contain markings identifying the level at which it was classified and could only be stored in an approved facility and container.

### CARL HALLER's Agreements to Protect Classified Information

9. **CARL HALLER** held a TOP SECRET security clearance and had access to sensitive and classified information relating to the national defense that was closely held by the government ("National Defense Information" or NDI).

10. **CARL HALLER** had a duty to protect NDI and received training on the proper handling of U.S. government classified information. At no time did the Department of Defense, or any other government agency, authorize **HALLER** to possess classified documents or information at his home, on a personal computer, or on any other personal devices. Further, at no time did the U.S. government de-classify any of the documents referenced in this Indictment.

11. **CARL HALLER** understood that the unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure and transmission of those materials, and therefore could endanger the national security of the United States and the safety of its citizens. In particular, **HALLER** understood that a violation of the rules governing the handling of classified information could result in criminal prosecution.

12. For example, on October 7, 2005, **CARL HALLER** signed a "Classified Information Nondisclosure Agreement" where **HALLER** accepted numerous obligations in order to be granted access to classified information. Within this agreement, **HALLER** agreed that the unauthorized retention or negligent handling of classified information "could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation."

13. Further, on or about September 24, 2021, **CARL HALLER** signed a "Personal Attestation upon the Granting of Security Access" where **HALLER**, both verbally and in writing, attested to the following statement:

> I ACCEPT THE RESPONSIBILITIES ASSOCIATED WITH BEING GRANTED ACCESS TO CLASSFIED NATIONAL SECURITY INFORMATION. I AM AWARE OF MY OBLIGATION TO SAFEGUARDING AND LIMITING ACCESS TO INDIVIDUALS WITH THE PROPER SECURITY CLEARANCE AND OFFICIAL NEED TO KNOW. I FURTHER UNDERSTAND THAT IN BEING GRANTED ACCESS TO CLASSIFIED INFORMATION, A SPECIAL CONFIDENCE AND TRUST HAS BEEN PLACED IN ME BY THE UNITED STATES GOVERNMENT.

## COUNTS 1-7
### Unauthorized Possession and Willful Retention of National Defense Information
### (18 U.S.C. § 793(e))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From a date unknown to the Grand Jury, through on or about February 3, 2023, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**CARL HALLER,**

having unauthorized possession of, access to, and control over documents relating to the national defense, did willfully retain the documents and fail to deliver them to the officer and employee of the United States entitled to receive them, that is, **CARL HALLER**, without authorization, retained at his residence documents related to the national defense, including the following:

| Count | Classification Marking | Original Classifying Agency | Document Description | Declassification Date |
|---|---|---|---|---|
| 1 | SECRET//RELEASEABLE TO USA/FVEY | U.S. Southern Command | Analysis of Central American Country's Drug Trafficking Organizations and their Tactics, Techniques, and Procedures | August 15, 2036 |
| 2 | SECRET | U.S. Southern Command | USSOUTHCOM Personnel Recovery Spins: utilized to recover personnel in the event they become isolated | March 31, 2038 |
| 3 | SECRET//NOFORN | U.S. Southern Command | Microsoft Excel Spreadsheet on Priority Intelligence Requirements (PIRs) | September 04, 2037 |
| 4 | SECRET | U.S. Southern Command | PowerPoint slide deck on potential location of U.S. hostages in South American country, who had been held in captivity at the time for 4 years and 30 days | March 16, 2032 |
| 5 | SECRET//NOFORN | U.S. Southern Command | Intelligence Information Report discussing Central American Country's Drug Trafficking Organization including human source information | January 29, 2063 |
| 6 | SECRET//NOFORN | U.S. Southern Command | Investigative Intelligence Report including human source reporting on the Assassination of a Government Official in a Central American Country | January 30, 2063 |
| 7 | SECRET//NOFORN | Federal Bureau of Investigation | Intelligence Information Report discussing potential corruption in a Central American country's national police, including human source information. | October 29, 2062 |

In violation of Title 18, United States Code, Section 793(e).

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **CARL HALLER**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 793, as alleged in this Indictment, the defendant shall forfeit to the United States:

5

a. any property constituting, or derived from, any proceeds obtained, directly or indirectly, from any foreign government or any faction, party, military or naval force, whether recognized or unrecognized by the United States, as a result of such violation, pursuant to Title 18, United States Code, Section 793(h); and

b. any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Sections 793(h) and 981(a)(1)(C), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 793(h), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

_____
JONATHAN D. STRATTON
ASSISTANT UNITED STATES ATTORNEY

_____ for:
CHRISTOPHER M. COOK
TRIAL ATTORNEY
COUNTERINTELLIGENCE & EXPORT CONTROL SECTION
U.S. DEPARTMENT OF JUSTICE NATIONAL SECURITY DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: 25-CR-60058-LEIBOWITZ/AUGUSTIN

v.

CARL HALLER,

                    Defendant.
                                            /

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
- [ ] Miami
- [x] FTL
- [ ] Key West
- [ ] WPB
- [ ] FTP

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __7__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I  [ ] 0 to 5 days
   - II [x] 6 to 10 days
   - III [ ] 11 to 20 days
   - IV [ ] 21 to 60 days
   - V  [ ] 61 days and over

   (Check only one)
   - [ ] Petty
   - [ ] Minor
   - [ ] Misdemeanor
   - [x] Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge_____ Case No._____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge_____ Magistrate Case No._____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge_____ Case No._____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
JONATHAN D. STRATTON
Assistant United States Attorney
FL Bar No.     93075

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: CARL HALLER

**Case No**: _____

Counts #: 1-7

Unauthorized Possession and Willful Retention of National Defense Information

Title 18 United States Code Section 793(e)
* Max. Term of Imprisonment:   Ten Years' Imprisonment
* Mandatory Min. Term of Imprisonment (if applicable):   N/A
* Max. Supervised Release:   Three Years
* Max. Fine:   $250,000

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.